Incorporated. May it please the Court, Counsel, this is a patent case, but we're not here on a question of patent law. I only wish we were, but we're not because the judge below dismissed the case summarily under the two-dismissal rule of Rule 41. The Seventh Circuit, which supplies the controlling decision authority in this case, has pointed out that the courts have very frequently stated the purpose of Rule 41, it's a two-dismissal rule, is to prevent the type of harassment that can arise if a plaintiff were to repeatedly file a case and then repeatedly voluntarily dismiss it. But the trial court applied the rule here, where there was no threat of any such harassment. Harassment isn't written as a condition into the rule. That's correct, Your Honor. And your client filed three times. That's correct, Your Honor. The problem is that the rule is ambiguous, and that's why we need to look at the purpose of the rule, and that's why it's ambiguous on this particular point. Now Westside and the trial court have both argued, well, the rule is perfectly clear. There's no need to look at the purpose of the rule in applying it in this situation where the defendants in the first two cases were different. But that's just not true. And the problem with the rule is that it talks about same claim, but it doesn't discuss whether the same claim needs to be alleged against the same defendant. In fact, Westside has acknowledged this problem in the language of the rule. It did it below, and it's at the bottom of Joint Appendix 67, and it's briefed below. It said, rule 41 does not, in fact, specify whether both prior dismissed suits must have been brought against the same defendant to be a bar to a third suit. That's at the bottom of Joint Appendix 67. Now it made the very same statement on appeal at page 17 of its appellate brief. In fact, neither party below argued that the statute was clear and unambiguous. That's a notion that came from the trial court judge, and she relied on that notion to avoid addressing the purpose of the rule. Now how does the rule's purpose fit into the analysis of this case? The purpose fits in as follows. The case law has discussed in a situation where there are two different defendants in the first and second cases that there must be a relationship between the two defendants in order for the rule to apply. But the purpose of the rule is important because not just any relationship between the two defendants will address the purpose of the rule to prevent a series of harassing lawsuits. For example, there can be a lot of close connections between the two defendants. There could be a close relationship. But it still doesn't create the type of relationship that creates the problem that the rule is intended to address. Let's say, for example, a close relative of mine was dead. Say my mother, she's alive, but say she's dead. We're obviously closely related. But there is no relationship between the two of us that could give rise to a pattern of harassment because she's dead. That's what happened here. The plaintiff in the first case was legally dead. It was practically dead. It was out of business. It had been dissolved as a corporate entity. It could no more be harassed than it could do business. Now, there are two other cautionary principles that the court should consider in applying the two-dismissal rule. And these both were explained by the Seventh Circuit in this. Let's say the first corporation was dead. And we won't psychoanalyze your example. My Freudian reference. But the principles and the products were basically the same, weren't they? It was just the difference in state of incorporation. True, the principles and the products were the same. But the corporate entity, of course, has an important role in the law. It was the corporate entity that was sued, not the principles. It wasn't a situation that there had been a Nevada corporation, and now there was a California corporation. That's correct. With a different name. Different name. And the first corporation was defunct. Those were the two differences. It was incorporated, it had a different name, and it was incorporated in California instead of Nevada. That's correct. But that's the difference that makes all the difference in this case. There wasn't a potential for harassment, because the first defendant could not be harassed. If we went your way, couldn't a potential defendant basically destroy a lawsuit by changing its state of incorporation a couple of times, and you're out of court? That's interesting. It could. Without there being the type of harassment that the rule is intended to address. Now, there are two principles the Seventh Circuit discussed in the Sutton case opinion that apply to summary dismissals under Rule 41. And they both point to the fact that any benefit of the doubt should be in favor of the plaintiff and against summary dismissals. The first principle is that the federal rules generally favor decisions on the merits, not resolving cases summarily. And in a patent case in particular, a summary dismissal is particularly harsh because of the continuing nature of a patent infringement. If a case is dismissed summarily, while the patent still has some life, the defendant is getting a free pass, or essentially a royalty-free license for the life of the patent. Now, there's another principle that the Seventh Circuit pointed out that applies specifically to Rule 41. And it has to do with the fact that the two-dismissal rule was new to the law when the federal rules were passed. Under the old practice, a plaintiff could voluntarily dismiss without prejudice as many times as it wanted to, without fear of any of the dismissals being an adjudication on the merits. The Seventh Circuit pointed out that since Rule 41 is an abrogation of the old rule, it must be narrowly construed. Now, these cautionary principles, when coupled with the de novo standard of review that applies here on appeal, mean that we should be looking for ways to avoid a summary dismissal of the case. We shouldn't be looking for ways to easily get rid of the case. And there was no reason to apply the rule here, because the purpose of the rule was not threatened. So we respectfully request that the court reinstate the complaint, that the case proceed on the merits, and that someday maybe we will be here addressing a question of patent law. Thank you very much. May it please the court. We're here today to talk about whether there's any reason not to apply the two-dismissal rule, given that Kerr Corporation twice brought, and twice dismissed, the same claim pursuant to Federal Rule of Civil Procedure 41A1.      to Federal Rule of Civil Procedure 41A1. In both cases, the case of 2001 and the case in 2002, we have the same plaintiff asserting the same patent against the same product, the crystal tip dental tool, utilizing the same mechanism to unilaterally, voluntarily dismiss both of those actions, Rule 41A1. But a different defendant. Substantially the same defendant, the same business, operating from day to day with, as your honors have pointed out, a change in incorporation from Nevada to California, and a partial change in the name. Was there ever a time when there was a complete gap in the sense that there was no corporation in existence? In other words, you had the Nevada Corporation on, say, March 1. And then that same day did they incorporate in California, and then let things lapse in Nevada? Your Honor, my recollection is that the- Do you understand my question? Was there ever a gap when nobody was incorporated anywhere, to put it bluntly? In answer to your question, I think actually there was an overlap. I think actually that the California Corporation was created before the Nevada Corporation was dissolved. And the business continued to operate from day to day. And once the California Corporation is formed, they're holding themselves out as waste resources. Would that not perhaps make a difference if you had a situation where you had a Nevada Corporation, it goes out of existence or dissolves on March 1, then on April 1, a California Corporation is created. And if someone tried to sue on March 15, there would, in fact, be nothing in existence, right? Would that make a difference? I think under general corporate law, most states' corporate law, there is the ability to pursue your legal rights and remedies against a corporation, even after it's technically dissolved for a period of time. So I think in your example, there would certainly be- You'd be within that window. You'd be within that window. So the plaintiff would not be without the ability to pursue its rights. But you're saying here there was overlap. Here, I believe there was overlap. I believe that's in the record. And certainly from- Also most interesting, when the complaint, the first action was brought, the California Corporation had already been formed. And Westside was doing business as Westside Resources. It's just that the plaintiff sued the wrong defendant. Sued Westside Industries. They sued Westside Industries when they wanted Westside Resources. Because Westside Resources had been formed, and that's how the business was operating. And in fact, as the district court said in its opinion, Westside Resources, quote, is identical to Westside Industries in everything but name. That's at page eight of the joint appendix. And I think we've amply demonstrated in our brief the continuity from day to day, from when they were operating as Westside Industries to Westside Resources. And all that evidence is uncontradicted. In their briefs to this court, the federal courts have expressed diametrically different views about whether same claim means same defendants. That's not the case. Courts presented with situations like the situation before this court have again and again expressed the same view. In fact, namely that the defendants must be the same, substantially the same, or in privity. The Ninth Circuit said this in Lake of Las Vegas. Fourth Circuit said this in Manning versus South Carolina Department of Highway. The Minnesota Supreme Court said this in Falkenstein versus Braufman. And the United States District Court for the Northern District of Illinois and Ogden Allied Security Services said the exact same thing. Same defendant, substantially the same defendant, or in privity. At this point, I have to point out an error in our brief. Page 18, we cite in the fourth of four bullet points to Murray versus Sevier. The site actually should be to Manning versus South Carolina Department of Highway and Public Transportation. That's 914 Fed 2nd 44. I provided a copy of the case this morning to Mr. Cross. It's an error I noticed last night in preparing for this morning. I have additional copies of the case, if the court would so like after. It's at 914 Fed 2nd 44? Yes, Your Honor. It's no surprise, really, that the courts have taken the view that the same claim language of 41A1 means that what you're looking for, the same defendants, substantially the same, or in privity, because the second dismissal under 41A1 operates as an adjudication upon the merits. So what we're really dealing with is race judicata. And race judicata applies to parties and their privies. There's a nice discussion of this in the Manning case, actually. And the court in Manning says, privity is used in the context of race judicata, or collateral estoppel, does not embrace relationships between persons or entities, but rather it deals with a person's relationship to the subject matter of the litigation. And you can look at the relationship of Westside Industries and Westside Resources to the subject matter of this litigation. They were both selling the crystal tip dental tool. And so the issue for both of them is whether that product infringes the patent, whether they can continue making, using, selling, and offering for sale that product. So that's the test, same defendant, substantially the same defendant, or in privity. And under that test, Westside Industries and Westside are the same. Kirk intends we have to look at the purpose of the rule before we can apply it. We have to look to see if there's harassment. That's not so. The court, Seventh Circuit Court, in Sutton Place said you look to the purpose of the rule if you're extending its scope. And the facts of Sutton Place are very different from the facts of this case. In Sutton Place, the second dismissal was by motion. It was granted by the court. So we didn't have two notices of unilateral voluntary dismissal under 41A1 as we do here. The court in Sutton Place says again and again, the language of the rule is plain. Plain language of the rule, the court says. And the question we're presented with here is not whether to extend, but rather whether simply to follow the mandate of Rule 41A1. The Ninth Circuit in Lake Las Vegas says, quote, the rule does not require an inquiry into the circumstances of the two dismissals. And so the court, the Ninth District Court for the District of Wisconsin, reached the right conclusion here and said, quote, there is no case on point permitting the court to read an element of harassment into the rule. However, if one were to inquire into purpose here, this is precisely the kind of case this rule was designed to apply to. You have a plaintiff filing a case in 2001 against a party they ultimately recognize as the wrong party. And so they avail themselves of the mechanism of 41A1 to dismiss that case and to start again. They file another case in 2002. They sue the correct legal entity this time. But as the case proceeds, they decide it's not worth it for them financially. But they just amended the complaint? Yes, Your Honor. They could have amended the complaint. They could have amended it to name Westside Resources instead of Westside Industries. Nothing else in the complaint would have changed because the two complaints, in fact, except for that change in the name of the defendant, are identical. Could they have had the same venue? Well, offhand, I don't remember where the first case or the second case were venued. Wasn't the first case in Nevada and the second in California? Assuming they were, I don't know the answer to that question offhand. We'd have to look into other issues as well. Simply changing the name might not have been the answer. It may not have addressed the issue of venue, Your Honor. But what I meant by my remark was that if you look at the substance of the complaint, the first complaint and the second complaint, they're identical. It's the same cause of action. They allege the same patent, same product. And what about the risk that a defendant might change its statement of cooperation maybe twice? And dodge a plaintiff in perpetuity? Well, as we were discussing earlier, there's a period of time, even after corporations are dissolved, when causes of action, lawsuits can be brought against them. So dissolution alone and changing your technical entity is not going to solve the problem for you. And it certainly wasn't the reason that we had this change from Westside Industries to Westside Resources here. I think the reason for that, the buyout of one owner by the other, is clearly documented in the record. It was not motivated by it. In fact, it happened well before the first action was filed. Both of the previous cases, both the 2001 filing and the 2002 filing, were in the Central District of California. They were both. Thank you, Your Honor. Well, the second case, 2002, at some point, the plaintiff, Kerr Corporation, decided it was not worth pursuing financially, as they explained at Joint Appendix 156 to 157. And so again, they used the notice of dismissal, pursuant to 41-81, to dismiss. And at this point, the purpose of the rule is to provide to the defendant some closure. And at this point, Westside's entitled to rely upon the fact that the case is over once and for all, and that Kerr Corporation will not assert this patent again. The court, as well, has an interest in this. The court has an interest in seeing the management of cases being done in an efficient way, in a way in which plaintiffs are not continually refiling. A plaintiff gets one chance to start again under rule 41-81. It's not entitled to continually dismiss lawsuits and file new ones, asserting the same claim. In the reply brief, Kerr argues that there are no cases similar to this, no cases where the first defendant didn't exist. That's a red herring. There are plenty of cases in which the plaintiff files the first lawsuit against the wrong defendant, discovers it's the wrong defendant, uses 41-81 to dismiss, and files again. This is what happened in the city of Raleigh case. It's what happened in the Falkenstein case. And it's even what happened in the Lake of Las Vegas case. And as the court noted in the Lake of Las Vegas case, plaintiff's error is typical, the type of error motivating voluntary dismissals under rule 41-81. And that first voluntary dismissal counts against the plaintiff towards the two dismissals. So Kerr had a choice here. They could have amended the complaint, as your honor said. They could have moved the court under rule 41 to dismiss their first complaint or the second complaint. They didn't. They availed themselves of 41-81 twice. And there are consequences for this. And for these reasons, the district court's decision should be affirmed. Thank you. Mr. Cross? Thank you, your honor. The Sutton Court, the Sutton Place Court, the Seventh Circuit opinion, actually said in footnote three, citing a Second Circuit decision with approval, that the purpose of the rule should be kept in mind even in situations where its literal language might apply. Because of the harshness that results from a summary dismissal. So we should be keeping the purpose of the rule in mind, even if the language were clear on this point. Now, the Sutton Place case dealt with a provision of the language, a portion of the language, different than the problem that we're dealing with here. And the Seventh Circuit ruled that in that case, the language was clear. It nonetheless, very laboriously, analyzed the purpose of the rule. Exactly the opposite of what the district judge here. The district judge here said. Should we equally take into account that this was all in the hands of your client? Pardon? Take into account that it's all at my hands. Well, a voluntary dismissal is always at the hands of the plaintiff. You had other options. There were other options. But under the rule. You're telling us what we should consider, should we consider the other as a counterbalance or not? The counterbalancing doesn't need to be considered if the rule and its purpose allowed what the plaintiff did here. We can talk about options, but if there was no need to engage in those options, which is what we believe the rule provides, then whether there were options or not, really is of minor consideration. Now here, counsel noted that in situations, there's about a half dozen cases that we have all found that deal with situations where the rule was asked to be applied to situations where there were two different defendants. In every one of those, there is a discussion of the purpose of the rule. And courts turn to the purpose of the rule because of the ambiguity here. And the courts have said, as counsel pointed out, that there needs to be, in fact, the Ninth Circuit said in Lake of Las Vegas, there needs to be at least a relationship between, a substantial relationship between the two defendants. And what we're talking about here is how do you determine substantiality? Substantiality of the relationship needs to be measured against something. And that something is the purpose of the rule. In this situation, yes, there was a close relationship. There were many connections between the two defendants. But there was one big difference. And it's that difference that gave rise to the fact that there was no possibility of harassment. Now, simply because a plaintiff names the wrong defendant can't be a reason to apply the rule. Say, for example, a plaintiff mistakenly sues ACME Corporation of Wyoming. But it's not one mistake rule. It's a two dismissal rule. So just making one mistake doesn't get you out of court. That's correct. The rule says two. It would be two. And here there were three sues. Well, let's take, for example, there were three different ACME corporations. The first one of Wyoming, the second one of Colorado, and the third one of Wisconsin. I'm glad you've gotten away from your mother. Pardon? My mother? My mother will be glad to hear that I'm away from her as well, that I'm not talking about her in that way as well. But if the three corporations aren't related, it doesn't matter if they were sued mistakenly. So in applying the two dismissal rule, we really need to look at what is the connection, if any, between those three defendants. And we need to look at that connection in light of the rule's purpose. And that's all we ask. And we believe that, given the de novo standard of review and the cautionary principles that apply to summary dismissals, that this complaint should be reinstated. Thank you very much. Thank you. Thank you so much.